UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE                            )
                                 )
FLOYD TURNBULL &                 )
MERLINE TURNBULL,                )   No. 03 B 50383
                                 )
            Debtors.             )

## MEMORANDUM OPINION ON DEBTOR'S
## MOTION TO MODIFY CHAPTER 13 PLAN

On December 15, 2003 Floyd and Merline Turnbull ("Debtors") filed this bankruptcy case under Chapter 13 of the Bankruptcy Code. Debtors' Amended Chapter 13 Plan ("Plan") was confirmed on February 24, 2004.

Key Bank USA, N.A. ("Key Bank") held a security interest in the Debtors' vehicle.

Subsequent to Plan confirmation, Debtors' vehicle was involved in an accident and deemed a total loss. Key Bank received the insurance proceeds on the Debtors' vehicle and applied those proceeds to its secured claim.

On May 4, 2006 Debtors filed their pending Motion to Modify Chapter 13 Plan (the "Motion to Modify"). In their Motion to Modify, the Debtors seek the following: (1) That any current default in their Plan payments be "waived"; (2) That the insurance proceeds received by Key Bank be credited against the thirty-six months of payments due to the Chapter 13 Trustee under the Plan; (3) That the Plan be deemed completed once unsecured creditors have been paid the 30% dividend due them pursuant to the terms of the Plan; (4) Alternatively, that Key Bank be barred from receiving additional distributions under the Plan and that its claim be deemed fully satisfied now, with the Plan

to be amended to provide that Debtors make plan payments from this point forward until the plan is completed pursuant to its terms in the amount of $385 monthly.

In the Motion to Modify, Debtors fail to cite any legal authority which would constitute grounds for modification of the Plan, and did not cite any legal authority whatsoever in the Motion to Modify. Likewise, counsel for Key Bank did not cite any authority in its objection or otherwise.

For reasons set forth herein, the Debtors Motion to Modify is granted for the limited purpose of allowing the Plan to reflect a reduction in Key Bank's secured claim based on the insurance proceeds it received. However, those insurance proceeds received by Key Bank will not be credited against the Debtors thirty-six months of monthly payments due payable under the Plan, as Key Bank was entitled to all such proceeds. Key Bank is not barred from receiving any additional disbursements, as it has due the balance of its secured plan and also its claim against the Debtors bankruptcy estate. Debtors present default in payments under their Plan will not be "waived" as part of their effort to get credit for such payments from the insurance proceeds.

An order to this effect will be separately entered.

## JURISDICTION

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (L), and (O).

## UNDISPUTED FACTS

The following facts are undisputed.

Debtors filed a Chapter 13 petition, schedules, and a plan on September 15, 2003. They scheduled a 2001 Ford Windstar motor vehicle (the "Vehicle") on their schedules as one of their

assets. Key Bank was scheduled as a creditor holding an undisputed secured claim. The retail installment contract for the purchase of the Vehicle, which was financed by Key Bank, provided that Mr. Turnbull agreed to make sixty-five monthly payments of $397.86 and a final installment of $397.86 at 18.99% interest beginning on April 19, 2003. Key Bank filed an undisputed proof of claim in this case for its secured interest in the Vehicle of $11,900 plus interest thereon, plus an unsecured claim in the amount of $3,339.27. The payments, including interest, that Key Bank is to receive on its claim under the confirmed Plan total $17,000.

The Debtors filed an Amended Chapter 13 Plan ("Plan") on February 10, 2004. The Amended Plan was confirmed on February 24, 2004. Debtors agreed therein to make monthly plan payments to the Chapter 13 Standing Trustee in the amount of $540 for thirty-six months. The Plan proposed to pay general unsecured creditors no less than 30% of their allowed amount.

Subsequent to confirmation, the Vehicle was involved in an accident. Key Bank first received notice of the accident on or about November 30, 2005 when Key Bank received a "Towed and Stored" impound notice dated November 21, 2005. On December 5, 2005, Key Bank was informed by Transcontinental Insurance, the carrier providing coverage on the Vehicle, that the Vehicle was deemed a total loss.

Key Bank received a total loss settlement payment from Transcontinental Insurance on February 9, 2006 in the amount of $9,678.93. Key Bank applied all of the insurance proceeds to its secured claim against the Debtors. The Chapter 13 Trustee's records reflect that Key Bank has received from the Trustee $4,451.37 in payments on its secured claim for interest, and $1,819.25 in principal payments on its secured claim. Together with the insurance payment, Key Bank received a total of $15,949.55. Key Bank has filed an Amended Proof of Claim reflecting

and crediting the amount received from insurance proceeds. The Amended Proof of Claim claims that Key Bank's remaining claim against Debtors is an unsecured nonpriority claim in the amount of $3,741.09. No objection has been filed to that Amended Proof of Claim, unless the instant motion be considered such objection.

As a result of the loss of Vehicle, Debtors have used personal funds in the amount of $2,300 to purchase a substitute vehicle. Consequently, Debtors fell behind in their Plan payments and the Trustee has filed a Motion to Dismiss because of that arrearage.

On May 4, 2006 Debtors filed the instant Motion to Modify. In that Motion, Debtors argue that the insurance proceeds should have been credited to Debtors Chapter 13 payments. Debtors further request that any default in their Plan payments be "waived", that the insurance proceeds received by Key Bank be credited against the thirty-six months of monthly payments payable under the Plan, and that the Plan be deemed completed once unsecured creditors have been paid the 30% dividend due them pursuant to the terms of the Plan, or alternatively, that Key Bank be barred from receiving additional disbursements under the Plan and that its claim be deemed fully satisfied.

Additional facts set forth in the Conclusions below will stand as additional undisputed facts.

## CONCLUSIONS OF LAW

### Key Bank Was Entitled to Apply the Insurance Proceeds to its Secured Claim

The purpose of obtaining insurance on the Vehicle was to protect the insured, Key Bank, in the event of damage or loss. "Essentially, any proceeds from such insurance serve as a

substitute for the insured collateral." In re Derickson, 226 B.R. 879, 881-82 (Bankr. S.D. Ill. 1998) (citing In re Feher, 202 B.R. 966, 970-71 (Bankr. S.D. Ill. 1996); See also In re Stevens, 130 F.3d 1027, 1030 (11th Cir.1997) (insurance proceeds act as a substitute for the insured collateral); In re Suter, 181 B.R. 116, 120 (Bankr. N.D. Ala. 1994) ("[f]rom a secured creditor's perspective, property insurance is a substitute for the collateral insured")). Insurance proceeds that flow from destruction of the creditor's security interest serve as a replacement of that collateral in a different form.

Moreover, the Retail Installment Contract signed by husband Debtor states, "Seller is granted a purchase-money security interest in the motor vehicle described above and ... in the proceeds of any insurance or service contract on the motor vehicle, and in the proceeds of any credit line and/or accident and health insurance financed hereunder, until amounts due under this contract are paid in full." (Key Bank Resp. to Debtor's Mot. Ex. 2.)

Key Bank was thus entitled to receive the insurance proceeds and allocate them towards its secured claim. Ford Motor Credit v. Feher (In re Feher), 202 B.R. 966, 971 (Bankr. S.D. Ill. 1996). The other unsecured creditors of the Debtors, who had no interest in the Vehicle, were not entitled to share in the insurance proceeds. Ford Motor Credit Co. v. Feher (In re Feher), 202 B.R. 966, 971 (Bankr. S.D. Ill. 1996) (finding that only secured creditor with interest in vehicle was entitled to insurance proceeds and the unsecured creditors, who have no interest in the car whatsoever, are entitled to no more than the payments set forth in the plan and have no claim to the insurance proceeds); In re Habtemichael, 190 B.R. 871, 874 (Bankr. W.D. Mo. 1996) (finding that because the unsecured creditors had no interest in the debtor's vehicle, they are not entitled to share in the remaining insurance proceeds); In re Arkell, 165 B.R. 432, 436 (Bankr. M.D.

Tenn. 1994); In re Tucker, 35 B.R. 35, 37 (Bankr. M.D. Tenn. 1983). In this case, because the unsecured creditors did not have an interest in the Vehicle, they should not receive any of the insurance proceeds. Thus, the insurance proceeds could not be applied against the Debtors' payments due under the Plan for benefit of all unsecured creditors.

### Debtors Are Permitted to Modify Their Plan to Reflect the Insurance Payments Received by Key Bank

A confirmed plan binds the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan. 11 U.S.C. § 1327.

The only modification allowed of a properly confirmed plan is under § 1329(a) of the Bankruptcy Code. 11 U.S.C. § 1329(a). After confirmation, § 1329(a) authorizes the debtor, the trustee, or general unsecured creditors to move to modify the confirmed plan. Section 1329, provides in relevant part as follows:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to-
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time for such payments; or
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. § 1329(a) & (b)(1).

Modifications are allowed only in the three limited circumstances set forth in § 1329(a)(1), (2), and (3). In re Witkowski, 16 F.3d 744, 745 (7th Cir. 1994). While the Debtors failed to cite any legal authority in their Motion to Modify, the only applicable provision allowing modification under the circumstances of this case is § 1329(a)(3). Under § 1329(a)(3) the Debtors may modify their confirmed plan to alter the amount of any distribution to the holder of a particular claim as required to reflect proper credit for any payment received by the holder outside of their Plan. Collier on Bankruptcy, 1329.04[3] (15 ed. rev. 2005).

The language of § 1329(a)(1) is plain and does not provide for any threshold requirement to modify a confirmed plan. In re Witkowski, 16 F.3d 739, 742 (7th Cir. 1994) (citing In re Powers, 140 B.R. 476, 748 (Bankr. N.D. Ill. 1992)). Some opinions have nevertheless struggled with finding the appropriate standard to apply for plan modifications. See In re Witkowski, 16 F.3d at 742. Some have held that to allow a plan to be modified under § 1329(a), the movant must make a threshold showing that there has been a substantial and unanticipated change in the debtor's circumstances. See, e.g., In re Weissman, 126 B.R. 889, 893 (Bankr. N.D. Ill. 1991); In re Bereolos, 126 B.R. 313, 326 (Bankr. N.D. Ind. 1990). Other opinions have held that the common law doctrine of res judicata requires a substantial and unanticipated change in circumstances to warrant a plan modification. See, e.g., In re Arnold, 869 F.2d 240, 241 (4th Cir.1989).

Such standards have been rejected in this Circuit. It has been held that a debtor, trustee, or unsecured creditor has a right to seek modification of a confirmed plan, provided only that the modification is shown to fall under one of the categories set forth in § 1329(a). In re Witkowski, 16 F.3d at 745-46 (7th Cir. 1994). It was further noted, "This is not to say that in determining

whether to modify a bankruptcy plan, the bankruptcy court may not consider whether a change in circumstances occurred, but § 1329 and the doctrine of res judicata do not require a minimal showing of a change in circumstances." In re Witkowski, 16 F.3d at 746. A motion to modify need not always be granted. "Whether the modification will be granted is within the bankruptcy court's discretion." In re Witkowski, 16 F.3d at 748.

Under § 1329(a)(3), the Debtors in this case may indeed modify their Plan to reflect the insurance proceeds that Key Bank has received outside of the Plan. Section 1329(a)(3) permits a reduction in the distribution under the plan, but that reduction is limited to the amount of payments recovered from another source. The Plan should thus be modified to reflect the payment of $9,689.93 that Key Bank received in insurance proceeds for its secured claim. Therefore, the Debtors Motion to Modify will be granted for this limited purpose.

Authority does not support the requested conclusion that Key Bank's claim has been paid in full. Rather, Key Bank still has an unsecured claim against the Debtors estate. Pursuant to the Plan, Key Bank's unsecured claim should be given the same treatment as other unsecured creditors. Therefore, Key Bank should be paid "pro rata, to the extent possible from the payments set out in Section D, but not less than 30% of their allowed amount." (Am. Plan.) Section D of the Plan provides, "The debtor will pay to the trustee $540 monthly for 36 months [and $0 monthly for an additional 0 months], for total payments, during the plan term, of $19,440." Id.

Key Bank has already recognized that its claim should be reduced by the insurance proceeds it has received. Accordingly, on February 27, 2006, acknowledging the post-petition

principal received and the insurance proceeds received, its amended claim asserted that it was owed only $3,741.09; no different or additional amounts were sought.

Certainly if the Vehicle had not been destroyed, the Debtors would have retained the Vehicle and the Trustee would have paid the full $17,000 to Key Bank as a secured creditor with a fully allowed claim. While it is unfortunate that the Debtors vehicle was deemed a total loss, there is no basis to contend based on that circumstance that Key Bank is not entitled to the full amount of its claim less payments received.

## Key Bank Was Not Obligated to Provide Debtors With a Replacement Loan on a Substitute Vehicle

In the Motion to Modify, Debtors assert that Key Bank took the entire amount of insurance proceeds without offering the Debtors any alternative for a replacement loan on a substitute vehicle. Debtors cite no legal authority or contractual basis suggesting that Key Bank had an obligation to do so. Moreover, Key Bank contends that at no time did the Debtors or their attorney contact it suggesting or requesting a substitution of collateral. (Key Bank Resp. to Debtor's Mot. ¶ 6.) No motions were filed by the Debtors seeking leave to incur additional debt to procure another vehicle or to utilize insurance proceeds to attempt to acquire a substitution of collateral. (Key Bank Resp. to Debtor's Mot. ¶ 6.)

## Debtors Default in Their Plan Payments Will Not Be Waived

Debtors are bound by the provisions in their Plan. 11 U.S.C. § 1327. Their failure to make payments in compliance with the Plan will not be waived. Debtors cite no legal authority suggesting that because of the loss of their Vehicle, this Court should waive their default under

the Plan. Since they have sought to be absolved from such payments and have not sought to defer them, this part of their motion will be denied.

### CONCLUSION

For the foregoing reasons, the Motion to Modify Stay will by separate order be granted for the limited purpose of allowing the Plan to reflect a reduction in Key Bank's claim based on the insurance proceeds it received. However, the insurance proceeds received by Key Bank will not be credited against the Debtors thirty-six months of payments payable under the Plan, as Key Bank was entitled to all of the insurance proceeds. Key Bank is not barred from receiving any additional disbursements, as it still has an unsecured claim against the Debtors' bankruptcy estate. Debtors default under their Plan will not be waived, and all other relief sought will be denied.

A separate order will be issued in conformity with this decision.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 11th day of August 2006.